Case number 14-1215, Ory Eshel et al, Appellants v. Commissioner of Internal Revenue Service. Mr. Horwich for the appellants, Ms. Aveda for the appellee. Good morning. My name is Stuart Horwich, I represent the taxpayers in this case, Ory and Linda Eshel. Could you speak a little more directly into the microphone? Thank you. Sorry. I'm normally not accused of being too tall. This is a case of first impression. This is a case affecting thousands of Americans who either work or have investments in France. It's a summary judgment case, and the case is, the case turns on whether two French taxes, it's called CSG and CRDS, are creditable taxes under the Internal Revenue Code as modified by a section of the Social Security Act. We were unclear as to the views of the French government on whether these two taxes amended or supplemented their laws enumerated, the eight laws enumerated in the agreement. Is that a fact question or a law question? Under the court's rules, this is a law question. What is French law, what is foreign law, is a legal question, not a factual question. There cannot be a material dispute as to a fact when the parties disagree as to foreign law. So what would we do if we thought there was actually a dispute or confusion or lack of resolution on that legal question as to the views of the French government, but we actually have no capacity? I at least don't read French, so I have no capacity to figure this out and wouldn't presume to speak for the French government on this issue. Indeed, and unfortunately, even if it were the English government, we would also lack the ability to call them as witnesses any more than they would be able to call us. And the law or the federal rules presuppose that we do the best we can, and we try to gather whatever evidence we can, whether that be by expert report, by hearing, by testimony of whoever we might be able to get. What we did in the case is we gathered seven or eight different French statements, which we translated into English, which demonstrated unequivocally that the French government's position here. And when you say not clear, one of these was the French government saying, we think this is a credible tax under the United States rules. We have French testimony saying, or French statements. You say a credible tax, you mean for purposes of the income tax treaty? Yes. So where, so how do I know that something can't be both in the income tax treaty and in the totalization agreement? You assert that as given, I'm just trying to figure out how I know that. You know that for a couple of different reasons. First of all, in simplest form, the Treasury technical explanation tells you. The Treasury technical explanation tells you that these are income taxes or totalization taxes. Second, you have a- Well, not necessarily. I mean, didn't the tax court judge find that it's under, you know, they're creditable unless and until they are amending or supplementing the listed laws in the totalization agreement, in which case they're not. So they sort of are, and then they're taken out of that category. Okay. He didn't find that to be a consequence. No. I think we need to go back half a step, because we, the starting point is that under the four corners of the Internal Revenue Code, these are creditable taxes. Nobody disagrees. These are creditable taxes. If we only were looking at the Internal Revenue Code, we would all agree that these are creditable taxes. The next step is that there is an override in Section 317b-4 of the Social Security Act. If Section 317b-4 applies, then they are no longer, because this simply says notwithstanding any rule of law, which would include the Internal Revenue Code. That would then take you to the French totalization agreement itself, which says, is this a law? Is this one of the enumerated laws? And indeed, it's not, but that's hardly surprising, since it postdated one of the enumerated laws, which then takes you to the question of, does this amend or supplement one of the enumerated laws? And that's where the battleground is. So the battleground is, was this something that amended or supplemented the laws? In order to make a determination about whether something amends or supplements these laws, this gets to standard interpretation of treaties. Right. And when we're talking about interpretation of treaties, the Supreme Court has told us how to do this. And we don't say, quote, what's the plain language? We say, what's the intention of the parties? And that's very important. What's the intention of the parties? And when you look at the intention of the parties, another thing the Supreme Court will tell you is that the intention of the parties, you can look at what the French have decided post-ratification. In fact, not only can you look, but you should. What do we make of the fact that the French put the CSG, codified it, in the Social Security Code? What am I to make of that? You're to make of that that when you look at the totalization agreement itself, it does not say, with respect to the enumerated laws, the French Social Security Code. It lists eight different laws. Some of them are in the Social Security Code. Some of them are not. Things that are in the Social Security Code are outside the scope of the totalization agreement. Things that are outside the Social Security Code are within the totalization agreement. The problem is there's not an overlap. And given that, given that it's not a kind of a gross, if it relates to Social Security, it's part of the totalization agreement, I'm reading the tax court very able opinion and nonetheless finding I'm not entirely confident that the court made the precise determination that is needed. Do we know, for example, and I think the most detail here is on page JA-146, the CSG law initially went to National Family Allowances Fund, and that's one of the eight enumerated, right? Right. But then it was amended, and a portion of it goes to two other funds, Compulsory Health Schemes, Old Age Solidarity, and then a variable but small part to National Solidarity Fund, and a piece to Retirement of Debt. Do we know anything about, well on those four, is it clear which of those are among the eight and which aren't? Yes. Yes. In fact, our expert report, in fact, goes to say that, for instance, the Old Age Solidarity Fund is outside the scope of those. The retirement, the unemployment benefits, which is also funded, is outside the scope of that. So, that's Hasidim. Is it two in, two out? Is that right? When you say two in, two out, I suppose the answer is yes, two in, two out of those four things. What about, I mean, what? Wait, wait, wait. Just because I want to track this. So we have Compulsory Health Schemes in. Yes. That's Maladin. Old Age Solidarity Fund. Out. National Solidarity Fund for Autonomy. Out. Some. Well, I mean, but this is the problem. We're trying to identify uniform commercial code, which is what I'm trying to do. But it doesn't, but it answers your question, Judge Griffith. The fact that it's in the French Social Security Code is frightfully interesting, but doesn't track the agreement. Okay. I mean, I'm going to ask the government, but, and retirement of debt? Retirement of debt is the CRDS. Right. Which is a completely separate outside. And part of the CSG. And part of the CSG. And that's completely outside the Social Security. Is there, I mean, one of the, my notes show that one of the enumerated laws in the totalization agreement is, quote, laws having, laws establishing the social insurance system. Right. That's very broad. But it doesn't levy a tax. And you don't get a period of coverage when you, there's no tax associated with that. Well, I mean, that's your conclusion. I mean. No, but that, there is no tax associated. There is no law. Why, why, why isn't the CSG a tax associated with that? It's supplement, I mean, the argument would be that it's supplementing that law because it's giving, raising money for the purpose of that. Establishing the social insurance system. If you took that same argument, you would say that the French conventional income tax, which even at the time it was created and this agreement was passed, 20% of French income tax was used to fund these same programs. So, you have the problem with trying to do that is that the French don't do it that way. There is a specific, there is not a specific funding. What you have to then look at is, what is the purpose of these agreements? And back to, if we're going to. What is your definition, or your definition on behalf of the French government to the extent you can, of supplement? So, you don't like the definition the tax court adopted here, right? Too broad. What is your understanding of what supplement is meant to mean? That's, I think, the harder word of the two. I would look at the, sorry, I would look at the eight different categories. See which ones impose a tax and see whether this broadened that tax base with respect to this, whether that increased it, whether that created a new class of beneficiaries. Couldn't that be an amendment? I mean, supplement is going to have to be different from amendment. Yes, but supplement could also be worded in the Article 2.3. You have amend or supplement and then there is a description in terms of a new class of beneficiary. Supplement could be. As an example, I mean, if we, is your answer to my questions about the four places where the CSG goes, CSG money goes, the same if I push back a little bit on your position and assume, just for purposes of questioning, that for something to be a tax under the CSG, it can be something that is supporting the benefit programs that benefit the clients. So it can be architectural and maintenance and not creating a new period of benefits. Could then, is your answer still the same that the ones that you say are unrelated are still unrelated or are they? If, let me give you a hypothetical back to make sure I understand the question. If they passed a tax that said, we will take exactly the same characteristics that created a tax for these enumerated laws and we will create a new one and the new one is said, the taxing base on the new one is these other seven, or four, and we would use the funds to pay into those other four, then I would agree that that was supplement. In other words, the problem with CSG is it does not apply only to the same things that Maladi, VS, and all of these other ones apply. It creates a new tax with a new base, including things that have nothing to do with conventional When you say base, I think I'm misunderstanding. I think you mean, who are we taxing? Yes, what income, what is the nature of the income that we are taxing? And I'm not sure that's relevant under the totalization agreement as I read it. And I'm the first to admit that I'm an amateur reader of this. But it seems the question is less, who are we taxing, than what are we doing with the money we collect? And part of the tax court's opinion that I'm looking at on JA-146 is saying a portion of these revenues goes to funds directly linked to the social security system and into these other funds. And so the inquiry of the tax court, anyway, is not who are we getting the money from, but where are we putting it, and is that, and then my question is saying, even if we know that's not giving people like your clients additional periods of benefits, it may be nonetheless supporting the system to still exist to give them those benefits. And so that's what I'm asking is, are all of these laws related in that way to the benefits, the social security benefits that are enumerated in your plan, would be eligible? And I guess then we come back to the ones, the welfare, the old, but we also, we have to push that example here because on your same example, we have Code Section 1411 in the Internal Revenue Code, which is politely and colloquially referred to as the Obama Care. Here we have another tax which is clearly strengthening the U.S. social security system. But that's outside. I mean, under U.S. law, that's not one of the mentioned laws, and everybody agrees it's not an intervention agreement. Well, we do agree, but when you say that it's outside, it certainly supplements the U.S. social security system. Indeed, if it were within, then it would supplement it. But it doesn't supplement one of the enumerated laws, except in a very broad sense. I mean, in that sense, the whole society supplements. It's an additional thing. Well, no, the laws defined in the totalization agreement with respect to the United States are all of the U.S. social security laws. It specifically references the U.S. social security laws in terms of which sections of the Internal Revenue Code. But not the health care laws. But not the Medicare laws. Right. But... Yeah, so, okay, but putting that aside, I guess that's what I'm seeking help from both sides about, is that on a slightly more granular level, what are the arguments about where this money is going, and are these descriptions that we have some descriptions, and it's just hard to tell how those relate to the adenumerated programs. And can I add one point? And not just where they're going, but what proportion of them is going there? Because I think that becomes important for... Well, I... Or not. Or not. Well, the problem here, though, is back to interpretation of an agreement. The French interpretation of this agreement is that CSG and CRDS are outside of this situation. You cannot have a treaty which would levy a tax on one side... I'm sorry. I misunderstood. Maybe I misunderstood your prior answer to Judge Pillard's questions. I thought you had identified several instances in which CSG was funding an enumerated tax package. Sometimes it funds under... Sorry. Sometimes it funds an enumerated law. Right. Sometimes it does not. Right. And I'm curious, in those instances in which it does, at what level does it fund it? What's the proportion of the CSG that's going? I believe... Well, it's a variable amount. It changes by whatever the government decides in a given year. Uh-huh. Do we know what this year is? I believe it's sort of in the 70 to 90 percent range this year that are within... Do we have to know for the relevant tax years here? No, I did not notice that off the... That's not in the record. I'm sorry. When you said within, you meant within an enumerated tax package? Within an enumerated law. Okay. But, again, we're still... We're sitting with a position that even on your example, we still have situations which just don't work. So we have the situation. The one that we discuss at length, and it's a small, but the point is it's unequivocal. You cannot have a totalization agreement covering the same tax as an income tax treaty if they give you different answers. These treaties are designed to prevent double taxation. A United States... A person living in the United States who sells French property gets taxed in France even though the totalization agreement says you cannot do that. The French position is clear about this. The French position as to what the law is is entitled to a great deal of deference. It's not dispositive, but it is entitled to a great deal of deference. The concept of why we have... Do you have the views of the... I guess it's the Center for Social Security of Migrant Workers, the National Independent Social Security Fund, which are, I think, the entities in France that really administer this program. Do we have anything that says what their view is on these taxes? The government put in two letters which just described what detached workers, but these... Do you have anything? You say the view of the French government is clear. No, I'm sorry. Yes, in that the ministerial statements that we had, which come to the opposite conclusion, are by those people's oversight. The Department of Finance oversees... Oversees these offices. Oversees these people. Okay. And so with an inconsistent positions, which we would be creating... And then we have to look also... I know you spelled it out, but I missed what was inconsistent. It doesn't seem necessarily inconsistent to me. It's a burden, but not necessarily in the terms of the treaty and the totalization agreement to say you might be in a position as someone working in France to have to pay to support French periods of benefits and to support a little bit the system that gives you those benefits. And when you go to the U.S. and not be able to get a credit on the ladder against your U.S. taxes. Well, a very basic example. If you were to own a French property and you were to sell it as a self-employed person were to sell it. Self-employed American residents were to sell it. Under the income tax treaty, France has taxing rights. Under the totalization agreement, France does not have taxing rights. It can't be both. And this situation creates both. Well, but under that scenario then, it's under the totalization agreement, right? I thought we talked about that was a carve out, no? No. It's more basic than this. France, I can't tell you if I were a French lawyer what the answer would be. Because if I followed the treaty, income tax treaty, I would say, of course you can tax it. If I would follow the totalization agreement, I would say, of course, France, you can't tax it. We have the same income event, the sale of French property. The treaty says France can tax the sale of French property owned by a U.S. resident. The totalization agreement says that France cannot tax it. You can't have it covered by both. It makes no sense. Is that something we have to resolve to resolve this case? I think that in order to create a coherent whole, you have to be able to create a situation. Treaties and tax is designed to stop. And if you have an inconsistency in an interpretation with the French having a clear view, that's quite an important, if not I have to resolve that, you have to reconcile the French position here, which is that this falls outside. And again, you have to harken back. Falls outside of the totalization agreement. Falls outside of the totalization agreement. And you have to harken back to why do we have a totalization agreement in the first place? We have a totalization agreement to totalize benefits. That is the purpose of these agreements. You're dismissive of Mr. Thiel's statement simply because there's no reasoning in it. But it is entitled to some deference, right? We have somebody from the United States involved with Social Security who says, no, this is part of the totality. Well, certainly he's entitled to mead-type deference. And mead-type deference is how much does it convince you? But a statement saying that to the best of my knowledge and belief, this is the way that it works is not exactly what the Supreme Court, when discussing mead-type deference, thinks of as a very convincing argument. Whereas we have legislation and we have ministerial statements by the French explaining their position, which goes the other way. Not entirely on this point. On related points, but not entirely on this. And I'm not sure that I think that we give it more than mead deference. I think this is not a Chevron-type situation. This is a treaty interpretation situation. I think there's more definitive executive authority to interpret rationale or not. But in light of, let's say, the national Westminster case and the Iceland case and things like that, where the French government has been steadfastly viewed in its way that this is outside the scope of the totalization agreement, whatever deference is entitled, the government is entitled, or the way the courts phrase it, they say simply, it erodes it a fair amount. Let me just ask you before you sit down, you had mentioned that 20% of the income taxation goes to supplement the new learning programs. Is that in the record? I hadn't seen that. In the tax, it won't be in the appendix, but in the tax court brief, the commissioner's brief, in the opening brief, about midway through the description of this. And I believe I actually cited in my brief, from memory, it's page 30 of their opening brief, where they point out that 20% of the income tax is in fact going to, is going there. So yes, I think it is in the record. Okay, great. Thank you very much. May it please the court, Julia Veda for the commissioner. I would first like to make clear that the totalization agreement does not prevent France from taxing anything. Before you do that, I would like to clear up one thing. The only names on your brief are the tax division of the Justice Department. That is correct, Your Honor. Was this brief shared with the Social Security Administration? It was not, Your Honor. Or the State Department? Are you speaking on behalf of the official views of the United States government in this brief, or just of the tax division of the Justice Department, the IRS? We are representing the position of the Commissioner of Internal Revenue vis-a-vis the tax at issue here. Nothing I say here is a pronouncement on the position of the United States in any matters related to foreign relations. Don't we need the official views of the United States government on what their agreement means? Not to resolve the dispute before the court today, Your Honor. Why not? It's an agreement between two governments. It's not an agreement between the Commissioner of Internal Revenue and somebody else. It's an agreement between the United States of America. That's what it says on page one of the totalization agreement and the government of France. And so I'm not aware of cases in which we, in interpreting the meaning of international agreements, let a single agency of the United States government, particularly one that has no interpretive authority under here, dictate what the outcome is, what the meaning is, let alone tell me what the views of the French government are. That is not what the Commissioner and the counsel before you today purport to do or purport to argue at all. But isn't that the legal issue? How can we interpret an agreement without knowing what the views of the parties were on what this means? And particularly, given Article 110, I think it is, we need to know what the French government, the meaning to the French government of amend or supplement, and whether that was satisfied here. One key point in response to that is that with very few exceptions, few if any of whom are likely to appear at this podium, an individual cannot represent that position. What you need to look at overall is the consensus among jurisprudence, among official statements, and among interpretations. No, I'm not sure what you mean by individual can't represent it. It's not at all uncommon to have the Justice Department obtain the views of the experts within the government and then convey those to courts. That happens all the time, and that certainly can be represented. And that has been done below. That has been done below in this case. There is a declaration from a representative of the Social Security Administration. That's Mr. Thiel's declaration. But he speaks to the best of his knowledge. He is not establishing an official state position. So we don't have the U.S. view. I can't imagine. First of all, that only tells us what the SSA considers. It doesn't purport to tell us what the views of the United States government are or what the views of the French government are. And the French President tells us that we need to know what those views are in interpreting an agreement. If you reach the point where you need to interpret that intent, then yes, that information is required. But the court need not proceed that far. What do you mean if we reach the point that we I missed your point. If we reach the point where we need to understand what the totalization agreement means? The totalization agreement only applies where you are in a circumstance governed by section 317 before the 1977 social security amendments. In other words, there must be taxes paid by any individual to any foreign country with respect to any period of employment or self-employment which is covered under the social security system of that foreign country. Only in those circumstances is there even a question of the scope of the totalization agreement. And a number of the straw men that have been raised here to try and skew the meaning of the totalization agreement don't fall within those circumstances at all. Here, on the other hand, there is a taxpayer who is by agreement within the scope of the totalization agreement for the periods at issue but is not invoking any of these exceptions that would create a question of what the governing intent was. So they're within the scope of the totalization agreement for various taxes that are clearly either the aid enumerated or supplement or amend those. The question we have is with this person who, to some extent, is within the scope of the totalization agreement are certain additional taxes that these taxpayers are challenging as shouldn't they be able to get it to deduct them? Do they supplement or amend those aid? And you heard the questioning of your opponent. One of the things we need to hear about is whether you think we need to have this more granular understanding of the relationship between the CSG and the CRDS. CRDS and the aid enumerated. Do we need that? And if so, where do we have it? And if we don't need it, why not? It is our position that you do not because amend or supplement is not an ambiguous term of part that is either defined in the agreement or susceptible to vast disparities in interpretation from one sovereign to another. Is the United States ready to agree that a French dictionary could be used to decide whether some law we pass here, amends or supplements, are two enumerated laws? If the French court or French authority that is interpreting the scope of the American law needs to contextualize it within the French system, it is reasonable for that court to use local, commonly understood vernacular when conducting a plain meaning analysis. Let's say Congress passes a tax. That's just part of a rider on some other bill. So it's not clear whether it's amended, but some of the money, 60%, is going to Social Security. Can a French court pick up a French dictionary and decide whether that law amended or supplemented the Social Security Act? The constraints on the interpretation of U.S. law in the totalization agreement here are much stronger than the constraints on the interpretation of French law. We've explained in our brief that section 1411 of the Internal Revenue Code by its terms falls outside of Chapter 2 and Chapter 21 of the Internal Revenue Code. It's in a new subchapter, Chapter 2A, which was created as a part of the... Sorry, is that answering the question that I asked? You're not, in other words, in the context of an American... So we don't know... Right, they need to figure out whether what that was doing was supplementing Title II of the Social Security Act or the designated provisions of the Internal Revenue Code. And Congress didn't helpfully... unhelpfully did not label this provision, this rider in some other bill about highway funding. And because it is not in Title II of the Social Security Act or Chapter 2 and Chapter 21... Oh, but they're going to say it supplements it because 60% of it provides... 60% of its funds go to the Social Security. Title II of the Social Security Act. Because the United States aspect of the treaty is drawn according to chapter and verse and not according to groupings of law by their philosophical underpinnings, amend and supplement has a much narrower reading in the context of an American law. That's what you tell us, but we have no idea whether actually the United States government agrees that amend or supplement means one thing for the U.S. government and a different thing for the French government? I think that from the face of the agreement, you can surmise that the American government has taken an extremely precise chapter  governed by this agreement, and if they intended a law to be included... Supplement though, I can tell... within the terms that they define. If Congress amends, it'll say amends, but supplements... I don't know how your chapter and verse tells me whether another law supplements, doesn't have to be entitled to to supplement it as long as it generally provides for the funding of the Social Security system. Not in the context of American law, Your Honor. Why does supplement mean something different? Because in the sense where you are looking at a framework with explicit boundaries... Supplement does not mean you have to amend those laws. If the definition of supplement here, once it provides additional support for... You can supplement Chapter 2 or Chapter 21 of the Internal Revenue Code by adding additional provisions to it. You do not need to amend an existing provision. That would be amending. That would be amending and supplementing. If what you were creating was a new provision, if Section 1411, in other words, were codified within Chapter 2, it would be a more difficult analysis. It was explicitly excluded from that chapter and therefore explicitly excluded from the scope of this agreement. Let me ask you, Ms. Aveda, you said that we interpret the French law as groupings of law according to their philosophical underpinnings. I wasn't sure what you were referring to. I mean, the question, the common question, the question we have to resolve is do the two taxes that the non-deductibility of which the taxpayers contest amend or supplement the eight enumerated laws? The eight enumerated categories of laws. They are not given in terms of where they are codified or what general legislative framework they're situated in. They are drawn very broadly in the treaty. Laws establishing the administrative organization of Social Security programs. Laws establishing social insurance systems. Laws on prevention and compensation of occupational accidents. All of these are a very specific beast under American law, but in French law they seem to be much more amorphous. Can you give your view on the very question that I asked opposing counsel? This is in the joint appendix in the tax court's opinion. The tax court concludes that the CSG directs a portion of its revenues into compulsory health schemes. In your readings, that part of the totalization agreement or not? Compulsory health schemes. Yes, Your Honor. The CSG is imposed on all participants in the French mandatory sickness insurance scheme. That is the universe of taxpayers who are obligated to pay this tax. Those are in general French residents or those who are earning income in France or otherwise subject to income tax in France. The provision of that social safety net for them is akin to what the court has heard in terms of periods of coverage. If you're in that system, you are earning periods of coverage. You're paying CSG on top of that. That is not entitling you to any different separate or independent period of coverage, but it's akin to an increase in the tax rate in what you're paying towards the benefits you're already getting. What the tax court was focusing on was not, and again, your opposing counsel seemed to agree with you that the base was who you're taxing is somehow relevant, but I thought that the tax court was saying not so much that who it's coming from is relevant, but where it's going, where the revenue is going. And you're telling me, well, actually under French law, it is relevant who it's coming from because that indicates that you're someone who's going to benefit from that at the back end. And that all of those people are potential beneficiaries, and therefore the compulsory health schemes is inside. They are, but it's you reach that conclusion at a much broader level, because if you are in a period of employment such that you're subject to the totalization agreement in the first place, that's where that inquiry matters. Once you're inside the scope of a totalization agreement, because you have periods of employment within the meaning of 317b.4, then you're in the system. You're governed by the totalization agreement. You're paying French social security taxes and covered by the French social security system. You are not paying United States social security taxes. You are not covered by the United States social security system. And money that is paid into compulsory health schemes is money that's paying into a scheme that is set up to benefit you under which of the eight enumerated? I believe that there is a social insurance system for non-agricultural employees or agricultural employees. I believe it could be a special social security system depending on your profession. It could also include laws involving occupational accidents, if there's a compensation or remedy element included in those. There are a number of laws that could be touched upon, a number of these categories within the treaty that can be meaningfully affected by participation in that system. So if you would do the same thing with respect to old age solidarity fund that would be helpful. Category 8. Laws concerning old age allowances and old age insurance for non-agricultural self-employed workers. These are the fundamental types of benefit that on both sides of the pond are totalized. And how about national solidarity fund for autonomy? I cannot speak from personal knowledge on what that actually funds, Your Honor, and I'm not sure that it is clear on the record. To the extent that it diverges from the categories that are included in the brief, we submit that that's immaterial because to the extent to which it's already documented and is clear on the record that these taxes do supplement categories of benefits, categories of laws that are included in the treaty, the fact that some portion of the revenue is directed elsewhere does not mitigate that conclusion. Where do we draw the line? Because there are some sort of taxes that we would loosely think of as part of the social safety net that are French, that are not under the totalization agreement. So how do we discern whether these I assume that Your Honor is speaking to the SAD, but yes, that is an unemployment tax. And unemployment taxes are not included in the categories of laws that are totalized on the French side. They are not included in the chapter and verse citations of law that are totalized on the American side, and indeed they are in some circumstances treated under a completely separate treaty. We have an unemployment tax agreement with Canada separate from the totalization agreement. We do not have one with France, but we do not treat that tax as a payment into the French security system that is excluded from creditability under U.S. law. Can something be covered under two treaties? Could it be in the income tax? Could something be covered under both treaties? Could it be covered by the income tax treaty and also the totalization agreement? Well, this CSG itself. I'll give you an example. But you just said you wouldn't do that in this Canadian example. You weren't going to do that. You had a separate, I thought you said there was a separate treaty that applies to unemployment. There's a separate treaty which treats unemployment taxes specifically because those are not addressed by the totalization agreement, and those are not intended by any sovereign to be within the scope of a totalization agreement. They are explicitly excluded from the categories that are at issue here. And even if some of the benefits are concentric with benefits you would receive under the laws that are included by their nature, and this is where I say philosophical underpinning, an unemployment tax and an unemployment benefit is distinct from a disability benefit or an old age benefit or a family benefit of that nature. Can I just press you further on that? So the last category that's described by the tax court is the fund dedicated to retirement of debt. That's part of the CSG and then also part of the CRDS. It's funded by both. And what's your argument that we know that that is related to or amends or supplements of the eight listed categories? In the initial enactment of the CSG that fund was not funded. Originally all of the CSG went to the National Family Allowances Fund. When they amended it, some of it, some residue after the first four enumerated funds had their pick was directed to the Social Debt Redemption Fund and then the CRDS separately funded that completely. That fund is directed to the defeasance of debt that was incurred by the organization that is enforcing and effectuating the laws and the benefits that are included within the agreement. I think that it may be somewhat of a black box in terms of what proportion of the revenues, which euros are applied to which debt and which benefit originally gave rise to that debt, but it's fairly clear that the funds go into this reserve and out of that reserve the debt incurred by these programs is paid. And that is a suspicion. So how do we know which programs debt is paid by this? Is it the SAE? If it were. Some of it may be. I don't think the record is clear on how much of these dollars or euros are directed to any particular fund and I think as counsel for the taxpayers has made clear that is itself a variable that will not be the same from one year to the next. But that should not be material to the inquiry of the court into whether the tax amends or supplements laws when it is clear that the funds from the tax are funding the laws and the benefits that are included. Now what if it was 1% and all the rest went to the SADC? I assume the position might be different or not. If it amends or supplements, it amends or supplements. Even if only 1% of it were a supplement. So you could have a law that is completely non taxpayer, almost 99% of which was going to the SADC, which I gather the commissioner has taken the position that that is not covered by the totalization agreement. So the American taxpayer would get a tax credit for payment of the SADC. The SADC is a levy, not a fund. But my question is so there are some sort of social security like laws that are not in the totalization agreement and a lot of them that are. And I'm pointing to the example that you identified as one that's not, which is the SADC. Right? Even though it's kind of social support kind of law. Right? And we don't actually know whether this last category that covers all of the CRDS and that some of the CSG is going to, where the CSG is concerned, well both of them, let's say most of the debt was debt accumulated by the unemployment, by the SADC. And only a teeny, teeny bit is going to the, those categories that are covered by the totalization agreement. I guess my question is do you have a legal standard that says nonetheless, none of that is deductible because it's a massive sum of money. When you're paying into a tax that, or you're paying a tax, a levy, into a fund that is dispersed at the discretion of the sovereign government, we as a different sovereign government can't take a position on how that sovereign needs to direct its funding before the United States tax code will be administered fully and fairly to every taxpayer obligated to pay that tax. It's a giant loophole, no? A loophole for whom, Your Honor? Well, maybe for the commission because it's a benefit to us to have less deducted. If it turns out that there is a tax that is disingenuously being levied on taxpayers who are then effectively subject to double taxation, then that is an issue that's not before this court and that is something that we would seek to resolve. Do they have to prove disingenuousness? I thought that's their case. They're saying we're effectively subject to double taxation. No, they are effectively seeking a windfall, Your Honor. If you're paying United States Social Security tax, you're getting United States Social Security benefits. If you're paying French Social Security tax, you're getting French Social Security benefits. But they're saying, let's say they're paying not for French Social Security taxes, but they're paying for the SAD? Well, the SAD on its face as a levy is creditable for those exact reasons. Exactly. They say this is an income tax, then you all say it's a Social Security tax. And we do that based on the publicly available information about how the tax is collected, the types of taxes that are meant to be included within this agreement by its face. And that's a plain language reading. That's not trying to unpack the sovereign intent. And just to be crystal clear on your plain language reading, so the tax court said that supplement means making up for deficiency or strengthening the designated laws, right? That is a generous definition of the word, and this court doesn't need to extend it that far. Okay, so maybe you're not defending the tax court judgment. The tax court said, quote, making up for deficiency, end quote, or, quote, strengthening, end quote, the designated laws. Do you defend that or not? We do. So that's what supplement means. That's the plain language meaning of supplement. Yes. That applies to the French government, but not to the U.S. government. That applies to the face of the agreement. Does it apply? Does that definition of supplement apply to the U.S. government? In what context? Does it apply if a law is passed and it's determined that it makes up for a deficiency in one of our designated laws, or strengthens one of our designated laws, does that meaning of supplement apply or not? Not if it is outside the terms that are explicitly set forth on the face of the agreement. That's not answering my question. It's not outside it because it's supplementing. It is strengthening. It is strengthening Title II of the Social Security Code. Is that supplement or not? It strengthens Title II. If your Honor's hypo is that there is a tax that is universally strengthening the entire Social Security regime in the United States. No, that is not my hypothetical. My hypothetical is that it is strengthening Title II as described in the totalization agreement. It strengthens it. That's the determination. Is that a supplement? It's plain language. You just told me it's plain language. It is. It is plain language. However, Chapter 2 and Chapter 21 of the Internal Revenue Code of 1986 and regulations pertaining to those chapters are not strengthened by additional funding. They are strengthened by changing their terms. They are defined in terms of their absolute statutory framework. They are not defined in terms of what goals they are accomplishing. Do you also have a position on with the change in 2012 where the CSG and CRDS or whatever it's called still now tax property sales? Is your position the same? I know you say those aren't the years at issue here. I just want to know the position of the Commissioner of Internal Revenue. Did that change your view on the nature of these taxes? It does not. This goes back to an answer I sought to give earlier to Judge Pillard because the creation of a capital gain as a tax base for these levies shows up in relief. Why you need to look at Section 317 before when you're construing the agreement. It's not about who can tax whom. It's not about who can tax what. It's about is a tax being paid by an individual to a foreign country with respect to any period of employment which is covered under the social security system of that country. If you are in America and you are paying American social security taxes into the American social security system and you sell your house in the south of France, you realize a capital gain on that. That is subject to the CSG in France, but that is a creditable tax to you in the United States because you are not covered by the French social security system. You are not in a period of employment where you are paying into the French social security system. You are only paying into one system at a time. And in that context, you do get a tax credit for the amount paid on the capital gain because we are not double taxing social security. We are paying American social security for American benefits. We are totalizing the periods of employment. You may have already answered this by saying that you adopt and defend the standard of the tax court, but what legal standard would you have us adopt in this case? The tax court took a plain language reading of amend or supplement and I understand Judge Millett's concern that lifting it out of the American Heritage Dictionary comes with baggage that they may not have intended. If you could write it right now, what would be the holding that you wanted us to adopt? A law amends or supplements the categories of law that are included in the agreement if they are intended to fund those laws and are roughly akin to an increase in the taxes that are already funding those laws, notwithstanding that some of those funds may be directed to other funds or other benefits that are not within the scope of a totalization agreement. Do you mean intended to fund those laws in part is what you mean? At all. If they fund those laws. To add one euro to those laws. If it's a de minimis funding then that creates a policy issue that we would then need to resolve on those facts. We do not have those facts here. Just to be clear, that would be a policy problem, not an interpretive problem. Your view of this agreement is that if it were even de minimis, one euro, it would count as supplement. Based on the way that the French side of the agreement has grown? Yes. We'll rest on our brief. Thank you very much. Thank you. Just a couple of quick points of clarity. In answer to the question of old age solidarity, our expert report on Joint Appendix, page 100, paragraph 15 answers the question that old age solidarity in fact is not one of the enumerated laws. Another point that was quite important here that maybe we're getting lost in the shuffle is that there is nothing about the CSG and CRDS which mandates that the French use it in the way they do. The French constitutional law is quite clear. It is a income tax. It does not need to be used or funded in the way that it is used. It could go into the general coffers and the French could use general funds to fund its social security program. Again, that's in the appendix. The French are very clear about the distinction between what is an income tax and what is a social charge. There is no doubt that this is on the income tax side of it. The question of the sale of the French property again is missing the point. The point is not do you get a credit for it. That's a 317b4 question. We haven't gotten there yet. We have to start off with can the French tax it? If I follow the totalization agreement they can't tax it. They don't have taxing rights. You could say to the French I don't mind paying you because I'll get a credit in the U.S. that I may or may not be able to use based on my whole situation. You would say to them no, we are not going to pay it. This is treaty protected. Waive the totalization agreement to them and say I'm not going to pay that tax. The problem is they'll waive the income tax treaty to you and say oh yes you will. Under article 13 of the income tax treaty you owe us the money. The French position can't be in both. We have legislative proof as to what the French think the answer is. We have consistent statement on the French side. On the U.S. side as you pointed out Judge Millett, the government has not produced us anything, but we do have the enabling legislation. What is this treaty trying to get at? This treaty is trying to totalize benefits. This treaty focuses on periods of coverage. There is no levy you can pay with any of the enumerated laws that don't give you a period of coverage. CSG, you can pay it. You do not get a period of coverage. There is no inconsistency in terms of the French view. The French view is entitled to a great deal of deference here. We have nothing on the other side other than a one sentence affidavit that says based on knowledge and belief without addressing any of the inconsistencies that are going on. When we look at this as a taxpayer you say why do I have this agreement? I have this agreement to totalize periods of coverage. If a tax does not give me a period of coverage, if the French position is unequivocal as to where this falls in that spectrum, including as I say, an amendment now where you can't argue the point. It's not arguable. We know that the French are taxing the sale of real estate. They've said so. You can't escape that conclusion. Admittedly, the tax court said it's a tail wagging a dog. What it really is, is it's clarity of a position. From our point of view, from a taxpayer's point of view, treaty interpretation, we have one side absolutely clear, unequivocal. The government has not produced a single shred of evidence, and they can't, that says anything other than what the French view is. The French view is this is outside the scope of the totalization agreement. It's an income tax. The constitutional court says it's an income tax. You can do whatever you want with the money. Funding, as a whole, has never been the standard. At the standard at the outset of the treaty, if funding were the standard, all of a sudden, 20% of all of your conventional income tax would have been uncredited. The point of a totalization agreement is specifically it does what it says. It totalizes benefits. You pay something, you get a point. You pointed to your declaration, which I had consulted on, I guess it was old age benefits, but I don't think it speaks to the question that I was asking, which is, yeah, there's social security schemes. That's all it says. It says there's social security schemes. It doesn't answer the question about their relationship to the aid of numerate categories, or does it? I think I'm just reading the paragraph, the first part of 15. CSG and CRDS are specifically allocated to specific purposes. Some of these purposes are covered by the laws, family benefits, compulsory health services, and some are not old age solidarity funds. I believe, actually, we do say there are ones that are clearly outsourced. Maybe I've misunderstood the question. Some of these are not, but then they do define old age solidarity funds as a social security scheme. I'm just not sure how we get there and whether I'll consult on that. Can I ask you the same question that I asked the IRS, which is standard that you think this law supports and that we should adopt? What should be the legal standard? Our holding that the interpretation of this agreement we should follow. We have to look at both sides of an international agreement. The French side is entitled to a great deal of deference. The French side is clear. The U.S. side, we have no information, but we do know why they implemented the treaty. In the first instance, they implemented the treaty to totalize periods of coverage. If it doesn't give you a period of coverage on the U.S. side and the French side is unequivocal, the better interpretation. If it doesn't give you a period of coverage, it's not in the totalization agreement. That's your legal rule. Is that right? I'm trying not to be difficult. I'm trying to interpret an agreement. I'm trying to give you a chance to say exactly what you want to say. I understand the reasoning coming out of the French, but it would be helpful to me just to know what your bottom line is. A bottom line position is that I do not believe absolutely something I haven't seen. There's 24 totalization agreements and there's a lot of laws in a lot of different countries. I don't know that it would be possible whether the president would exceed his authority to enter into an agreement covering something that didn't give you a period of coverage. I wouldn't want to say as a matter of course he couldn't do it. I don't think he could. Therefore, if he couldn't do it, then yes, if it doesn't give you a period of coverage it's outside the scope of the totalization agreement. That's interesting because I would have thought that he clearly could. Just to take the very narrow example, if I'm a taxpayer American working in France and I'm getting periods of coverage and then there's a crisis in the French social security system and they're saying we need to bolster the system that you're hoping when you retire is going to pay you something and we're going to do this in as fair a way as we know how. It's going to be progressive and whatever, but you do have to pay this extra bit. It's going to go only to benefits to which you're entitled in some category of benefits. But it's not going to give you an extra period of benefits. It's going to make sure that the period of benefits that you think you've already earned are there for you when you retire. Surely that would be permissible, no? Yes, and let me give you an example. So they increased like Belgium did. They had exactly that problem and they slapped a 10% income tax on everybody. A 10% income tax. A crisis tax. It was going to last three years. I've been there a long time. It's still there. That tax is creditable. If... So that tax is treated as an income tax? Absolutely. No doubt about it. But if they created a new law, I mean I'll make the argument. If they created a new law and they said we're going to create a new tax. It's going to be called V.S.B. V.S.B. and I'm sorry, V.S.A. is what creates the pension benefits. We'll create V.S.B. We'll call it something different and what it is is it's measured on exactly the same standard as V.S.A. and indeed it's going to be 5% measured by the same tax base as V.S.A. I would have a hard time arguing that point. We are in an uncertain world and if you're asking for a in a treaty interpretation case, we do the best we can. We have clear point on one side. We have policy on the other. They point in the same direction and that's the best we can do given the record and what we have. For your summary, you didn't address the issue of the meaning of supplement at all. It seems to me that's something you've studiously avoided in your argument. It seems to me it cuts against you. We have to understand what the word supplement means here. The way I see the case, that's central to it. How should I be viewing the meaning of the word supplement here? That's what the agreement says we're supposed to look at. Does this tax supplement one of the enumerated taxes? Supplement could be viewed as creating a new class of beneficiary. That certainly is within the context of where the word appears in the agreement itself. It says amend or supplement. It could be viewed that when you look to the intent of the parties. Absolutely. In my mind, there's no doubt that the intent of the parties controls the interpretation of an agreement. Supplement here could be viewed as creating a new class of beneficiary. You mean expand essentially? Expand the class of beneficiary. Expand the scope of V.S. It could be in those contexts, but it can't be creating new law that does not give you a period of coverage that taxes you where sometimes these things don't tax you that could be used to fund a system but doesn't have to be used to fund a system. Thank you very much. The case is submitted.
judges: Griffith, Millett, Pillard